IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FERNANDO GONZALEZ GUERRERO, | § § § | |
| Petitioner, | § § | |
| v. | § § | 1:25-CV-1334-RP |
| KRISTI NOEM, et al., | § § § | |
| Respondents. | § | |

**ORDER**

Before the Court is Petitioner Fernando Gonzalez Guerrero's ("Petitioner") Motion for a Preliminary Injunction, (Dkt. 13). Respondents Kristi Noem, Pamela Bondi, Miguel Vergara, Charlotte Collins, the United States Department of Homeland Security, United States Immigration and Customs Enforcement, and the Executive Office for Immigration Review (together, "Respondents") filed a response in opposition, (Dkt. 16), to which Petitioner replied, (Dkt. 17). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court **GRANTS** Petitioner's application for a preliminary injunction to the extent described in this order.

**I. BACKGROUND**

The parties do not dispute the relevant facts. Petitioner is a Mexican citizen who has resided in the United States for roughly twenty years after entering the country without inspection. (Mot. Prelim. Inj., Dkt. 13, at ¶ 3). While in Travis County custody following his arrest on assault charges, which were dismissed on self-defense grounds, Petitioner was served with a Warrant for Arrest of Alien and ICE Detainer and was detained by U.S. Immigration and Customs Enforcement ("ICE"). (Pet., Dkt. 12, at ¶ 3). On July 23, 2025, an immigration judge granted Petitioner a $5,000 bond after finding that he was not a danger to the community and did not pose a flight risk. (*Id.*). The U.S. Department of Homeland Security ("DHS") invoked an automatic stay under

1

8 C.F.R. § 1003.19(i)(2) and appealed the immigration judge's bond order to the Board of Immigration Appeals ("BIA"). (*Id.* at ¶ 4). Under a new, July 2025 interpretation of the relevant provisions of the Immigration and Nationality Act ("INA"), DHS argued that Petitioner should be considered an "applicant for admission," and therefore that his detention was governed by 8 U.S.C. § 1225(b), which requires mandatory detention, instead of 8 U.S.C. § 1226(a), which allows for discretionary detention. (Pet. Ex. C, DHS's Brief on Appeal, Dkt. 12-3). On those grounds, the BIA sustained DHS's appeal and vacated the immigration judge's bond order. (Pet. Ex. D, Dkt. 12-4). Petitioner remains detained at the T. Don Hutto Detention Center in Taylor, Texas. (Pet., Dkt. 12, at ¶ 5). On August 1, 2025, he filed a petition for writ of habeas corpus. (Dkt. 1). On August 21, Petitioner amended that petition, and on October 1, 2025, he filed a second amended petition. (Dkts. 4, 12). On the same day, he filed the motion for preliminary injunction that is the subject of this order. (Dkt. 13).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### III. DISCUSSION

Petitioner requests that the Court vacate the BIA's decision sustaining DHS's appeal, reinstate the immigration judge's bond order, and enjoin Petitioner's continued detention pending full adjudication of his Petition.

Petitioner makes three arguments for the invalidity of the BIA's decision: 1) it violates the INA, 2) it violates bond regulations issued pursuant to the INA, and 3) it violates Petitioner's constitutional due process rights. (Mot. Prelim. Inj., Dkt. 13, at ¶ 1). The Court first addresses Petitioner's likelihood of success on the merits of his statutory claim, i.e., that the BIA's decision vacating the immigration judge's bond order relied on an incorrect interpretation of the INA and his continued detention without bond is therefore in violation of the laws of the United States. Because the Court finds that Petitioner is likely to succeed on the merits of this claim, the Court does not address Petitioner's constitutional or regulatory claims at this time.

#### A.  Likelihood of Success on the Merits

At the heart of this dispute are two provisions of the INA, 8 U.S.C. §§ 1225(b)(2) and 1226, the statute's mandatory and discretionary detention provisions. Under § 1225(b)(2), the INA requires mandatory detention for a noncitizen who is either subject to expedited removal under § 1225(b)(1) or—at issue here—an "applicant for admission" who is "seeking admission," where the examining immigration officer determines the individual to not be "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1192(d)(5).

By contrast, 8 U.S.C. § 1226(a) provides for the discretionary detention of noncitizens arrested "on a warrant." Section 1226 allows for release on bond and provides "procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond

3

re-determination hearing in front of an immigration judge and a right to appeal any custody determination." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-479, [2025 BL 349492], 2025 WL 2783642, at *2.

Respondents contend that § 1225(b)(2) applies to anyone who, like Petitioner, is "an alien who was found to be present within the United States without ever having been admitted or paroled"—regardless of how long such an individual has been present in the country. (Resp., Dkt. 16, at 6).[1] This position relies on § 1225(a)(1)'s definition of an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Given this definition, "applicant for admission" is a broad enough category to include an individual like Petitioner, who was not admitted to the United States, regardless of how long that individual has resided in the United States.

However, § 1225(b)(2) references not just an "applicant for admission," but an "applicant for admission" who is "seeking admission." 8 U.S.C. § 1225(b)(2). Multiple courts have read this "seeking admission" requirement to mean a noncitizen present in the United States without admission who *has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country for years. *See Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *see also Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4 (D. Mass. July 24, 2025). In fact, again as noted by multiple courts, reading § 1225(b)(2) as Respondents suggest would make "seeking admission" surplus language that has no effect on the meaning of the provision. *See Martinez,* 2025 WL 2084238, at *6 ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and

---

[1] While Respondents' briefing on this motion for a preliminary injunction focused on due process considerations, this statutory contention is at the heart of DHS's original appeal to the BIA and is referenced both briefly in Respondent's response and extensively in briefing before the BIA. (Resp., Dkt. 16; Pet. Ex. C, DHS's Brief on Appeal, Dkt. 12-3).

negates the plain meaning of the text."); *see also Lopez Benitez*, 2025 WL 2371588, at *6 ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute.").

Similarly, reading § 1225(b)(2) as sweeping so broadly would also eliminate much of the meaning of § 1226: nearly every noncitizen would be subject to mandatory detention, making it unclear why the INA also contains a broadly-worded discretionary-detention provision. *See Lopez Benitez*, 2025 WL 2371588, at *8.[2] It is well established that "[i]nterpretations of statutes and regulations that avoid surplusage are favored." *Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020). As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country.

This reading is further supported by legislative history, recent amendments, and longstanding agency practice. Both § 1225(b)(2) and § 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. The IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention). *See Vazquez v.*

---

[2] As the United States District Court for the Southern District of New York explained in *Lopez*, "Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application. If, as Respondents contend, anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A) . . . then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply. Perhaps it might still apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully. But there is no indication that Congress intended § 1226 to be limited only to visa overstays. And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach."

5

*Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025). This dual approach was reflected by the Supreme Court in 2018 in *Jennings*, which did not squarely address the issue in the present case, but framed the distinction between § 1225 and § 1226 as follows:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added).

A recent amendment to the INA reinforces this reading. Earlier this year, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *19 (W.D. Wash. Sept. 30, 2025).

The interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the U.S. is also supported by longstanding agency regulations and practice. U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of noncitizens arrested near

6

international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Vasquez*, 2025 WL 2676082, at *7; *Rodriguez*, 2025 WL 2782499, at *24–26.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez*, 2025 WL 2676082, at *8–9.

This new agency interpretation was adopted by the BIA in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

*Matter of Yajure Hurtado* was a departure from the BIA's previous interpretation of the statute. *See Rodriguez*, 2025 WL 2782499, at *5. For example, in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025), a decision from one month before *Matter of Yajure Hurtado*, the BIA applied § 1226 to the detention of a noncitizen who had entered the United States without inspection three years prior. That decision was designated as precedent by the United States Attorney General. *See Rodriguez*, 2025 WL 2782499, at *5. Moreover, in an unpublished 2023 decision dealing with the application of § 1225(a)(2) versus § 1226 to a noncitizen already present in the United States, the BIA itself said that it was "unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances

7

here." *See id.* at *26. While the BIA's interpretation of the INA is not entitled to any deference by this court under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Matter of Yajure Hurtado*'s inconsistency with prior pronouncements reduces even its "power to persuade." *Loper Bright,* 603 U.S. at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 n.3, (S.D. Tex. Oct. 7, 2025) (collecting cases declining to follow *Matter of Yajure Hurtado* under *Loper Bright*).

District courts across the country have been weighing this new interpretation. Repeatedly, they have found that DHS and BIA's construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citing *Pizarro Reyes*, 2025 WL 2609425, at *4); *see also Lopez-Arevelo*, 2025 WL 2691828, at *7 ("In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."); *Rodriguez,* 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases and noting that "[e]very district court to address" the statutory question "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (joining the "chorus" of courts concluding that § 1226 applies).

For the reasons discussed above and cited by other district courts—the statute's text, the statute's history, Congressional intent, and the consistent past application of the statute—the Court concludes that Petitioner is likely to succeed on the merits of his statutory claim.

As noted above, having decided that Petitioner is likely to succeed on the merits of his statutory claim, the Court does not need to reach his constitutional due process arguments or his regulatory arguments. Respondents' briefing on this motion for a preliminary injunction focused on Petitioner's due process claims—arguing, in short, that Petitioner was receiving sufficient process and therefore could not make out an as-applied due process violation. (Resp., Dkt. 16 at 4-6). However, this contention does not answer Petitioner's statutory claims. If Petitioner was granted release on bond and had that bond vacated under an incorrect interpretation of the relevant statute, his continued detention without bond does not become lawful simply because he received the process of a bond hearing in the first place. The same reasoning applies as to whether Petitioner has counsel or ultimately access to appellate review of his underlying immigration case.

## B. Irreparable Harm

Petitioner alleges that his continued confinement under an allegedly unlawful interpretation of the INA is itself irreparable harm. (Mot. Prelim. Inj., Dkt. 13, at ¶ 9). He also alleges additional harms resulting from that confinement, namely that he is separated from his young children and faces barriers to pursuing relief through the Violence Against Women Act. (*Id.* at ¶ 10; Reply, Dkt. 17, at 5–6). Respondents contend that Petitioner will not suffer irreparable harm because he is represented by counsel and protected by "built-in procedural safeguards in the ICE regulations." (Resp., Dkt. 16, at 6).

Irreparable injury is "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Petitioner has alleged real and ongoing hardships—separation from young children and barriers to pursuing other relief—that are not addressed by the possibility of future relief or the existence of procedural safeguards governing the appeals process. Moreover, even absent Petitioner's specific allegations of harm, courts considering ongoing confinement of noncitizens under DHS and BIA's novel interpretation

9

of § 1225(b)(2) have found irreparable harm resulting only from confinement without likely statutory or constitutional authority. *See, e.g., Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025) ("the unconstitutional deprivation of liberty, even on a temporary basis, constitutes irreparable harm."). As such, the Court is convinced that Petitioner has met his burden of showing irreparable harm.

### C. Balance of the Equities and Public Interest

Petitioner must show that his threatened injury—continued confinement and the resulting hardships discussed above—outweighs the injury Respondents would suffer if his requested injunction is granted. Petitioner must also show the injunction would be in the public interest.

Petitioner's requested injunction would enjoin his continued confinement under § 1225(b)(2) and vacate the BIA's decision in Petitioner's case, reinstating the immigration judge's bond order. While undoubtedly "both the government and the public at large have a strong interest in the enforcement of the immigration laws," (Resp., Dkt. 16, at 6), that interest extends only to the actual reach of those laws, not beyond. Here, where Petitioner is being confined under what is a likely unsound interpretation of the INA, the Respondents' interest in enforcing that interpretation is not persuasive. Petitioner's release would not burden Respondents' ability to enforce immigration laws moving forward in his case—the same proceedings on Petitioner's immigration status will take place, and an immigration judge has already determined that Petitioner is not a flight risk. Likewise, an immigration judge already determined that Petitioner is not a danger to the community. (Pet., Dkt. 12, at ¶ 3). The government's interest in detaining someone without bond who was found to not pose a flight risk and not be a danger to the community is minimal. By contrast, Petitioner's interest in not being confined is, as discussed above, both substantial and fundamental. As a result, the Court finds that the balance of the equities favors granting Petitioner's requested injunction and that the public interest does not support Petitioner's continued confinement.

## IV. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that:

1. Petitioner's Application for Preliminary Injunction, (Dkt. 12), is **GRANTED** as follows:

2. The decision of the Board of Immigration Appeals in *Matter of Gonzalez-Guerrero*, A221-365-740, (Dkt. 12-4), is vacated. Pursuant to the order issued on July 23, 2025 by Immigration Judge R. Reid McKee, (Dkt. 12-2), Petitioner shall be released from custody under a bond of $5,000 and all other conditions set forth in the immigration judge's order.

**SIGNED** on October 27, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE