IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FERNANDO GONZALEZ GUERRERO, | § § § | |
| Petitioner, | § § | |
| v. | § | 1:25-CV-1334-RP |
| KRISTI NOEM, et al., | § § § | |
| Respondents. | § § | |

**ORDER**

Before the Court is Petitioner Fernando Gonzalez Guerrero's ("Petitioner") Second Amended Petition for Writ of Habeas Corpus. (Dkt. 12). Respondents Kristi Noem, Pamela Bondi, Miguel Vergara, the United States Department of Homeland Security, United States Immigration and Customs Enforcement, and the Executive Office for Immigration Review[1] (together, "Respondents") filed a response in opposition, (Dkt. 21), to which Petitioner replied, (Dkt. 24). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant the Petition.

**I. BACKGROUND**

The parties do not dispute the relevant facts. As discussed in this Court's Order granting Petitioner's Motion for a Preliminary Injunction, (Dkt. 20), Petitioner is a Mexican citizen who has resided in the United States for roughly twenty years after entering the country without inspection. (Mot. Prelim. Inj., Dkt. 13, at ¶ 3). While in Travis County custody following his arrest on assault charges, which were dismissed on self-defense grounds, Petitioner was served with a Warrant for

---

[1] All individual respondents were sued in their official capacities. Respondent Charlotte Collins, also sued in her official capacity, joined in the response. (Dkt. 22). For ease, the Court will refer to all respondents together, including Respondent Charlotte Collins, as "Respondents" and address their arguments collectively.

1

Arrest of Alien and ICE Detainer and was detained by U.S. Immigration and Customs Enforcement ("ICE"). (Pet., Dkt. 12, at ¶ 3). On July 23, 2025, an immigration judge granted Petitioner a $5,000 bond after finding that he was not a danger to the community and did not pose a flight risk. (*Id.*). The U.S. Department of Homeland Security ("DHS") invoked an automatic stay under 8 C.F.R. § 1003.19(i)(2) and appealed the immigration judge's bond order to the Board of Immigration Appeals ("BIA"). (*Id.* at ¶ 4). Under a new, July 2025 interpretation of the relevant provisions of the Immigration and Nationality Act ("INA"), DHS argued that Petitioner should be considered an "applicant for admission," and therefore that his detention is governed by 8 U.S.C. § 1225(b), which requires mandatory detention, instead of 8 U.S.C. § 1226(a), which allows for discretionary detention. (Pet. Ex. C, DHS's Brief on Appeal, Dkt. 12-3). On those grounds, the BIA sustained DHS's appeal and vacated the immigration judge's bond order. (Pet. Ex. D, Dkt. 12-4). As a result, Petitioner was detained without bond at the T. Don Hutto Detention Center in Taylor, Texas. (Pet., Dkt. 12, at ¶ 5).

On August 21, 2025, Petitioner filed a petition for writ of habeas corpus in this Court. (Dkt. 1). On August 21, Petitioner amended that petition, and on October 1, 2025, he filed a second amended petition. (Dkts. 4, 12). In his Second Amended Petition, Petitioner makes three arguments for the invalidity of the BIA's decision and therefore the unlawfulness of his detention without bond: (1) it violated the INA, (2) it violated bond regulations issued pursuant to the INA, and (3) it violated Petitioner's constitutional due process rights. (Pet., Dkt. 12, at 12–14).

On the same day that he filed his Second Amended Petition, Petitioner filed a motion for preliminary injunction. (Dkt. 13). On October 27, 2025, the Court granted Petitioner's motion for a preliminary injunction, finding that (1) he had shown a likelihood of success on the merits on the basis that he was being detained under a provision of the INA that, as a matter of law, did not apply to him, (2) Petitioner was likely to suffer irreparable harm from his continued detention without

2

bond, (3) the balance of equities tipped in his favor, and (4) his release on bond was in the public interest. (Dkt. 20). The Court ordered Petitioner released pursuant to the original bond order of the Immigration Judge in his case, (Dkt. 12-2), which set a $5,000 bond and included the further conditions of barring Petitioner from operating a motor vehicle without proper licensure or engaging in unauthorized employment. (Dkt. 20).

After the entry of the preliminary injunction, on October 29, 2025, Respondents filed a Response to Petitioner's Second Amended Petition for Writ of Habeas Corpus. (Dkt. 21). In their Response, Respondents assert that the Court lacked jurisdiction to issue the preliminary injunction under multiple jurisdiction-stripping provisions of the INA. (Resp., Dkt. 21, at 1). Respondents further contend that Petitioner's petition for writ of habeas corpus should be limited to as-applied constitutional violations and that Petitioner can show no such violations. (*Id.* at 1-2). As a result, Respondents "urge the Court to lift the injunction and deny the petition in its entirety." (*Id.* at 2). Respondents also continue to assert that Petitioner is properly subject to mandatory detention. (*Id.* at 3, 8–9). Petitioner replied, asserting that the Court properly had jurisdiction to issue the preliminary injunction and should now grant Petitioner's habeas petition. (Reply, Dkt. 24, at 2).

On October 31, 2025, in between the filing of Respondents' Response and Petitioner's Reply, Respondents filed an Advisory to the Court indicating that Petitioner was released from custody on a $5,000 bond. (Dkt. 23).

## II. DISCUSSION

### A. Current Jurisdiction Over Petitioner's Habeas Petition

The parties do not raise the question of jurisdiction under 28 U.S.C. § 2241, but the Court should always examine, *sua sponte*, if necessary, the threshold question of whether it has subject matter jurisdiction. *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). Jurisdiction under 28 U.S.C. § 2241 is limited to individuals "in custody." See 28 U.S.C.

3

§ 2241(c). Because Petitioner was released on bond after the intervention of the court on an emergency basis, it appears possible that he might no longer fall within this provision.

However, the Supreme Court has been clear that a person "subject to restraints 'not shared by the public generally'" can fall within the scope of § 2241, even if released on his own recognizance or on bond. *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 351 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). *See also Justs. of Bos. Mun. Ct. v. Lydon,* 466 U.S. 294, 300 (1984) ("Our cases make clear that 'the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.'"). In *Hensley*, the Supreme Court also indicated that it is significant if a petitioner has been released only due to judicial intervention. *Hensley,* 411 U.S. at 351 ("petitioner remains at large only by the grace of a stay entered first by the state trial court and then extended by two Justices of this Court."). And, in the specific context of immigration detention, the Supreme Court has emphasized that, where relief was granted on an emergency basis, "[u]nless that preliminary injunction was made permanent and was not disturbed on appeal, [released individuals] faced the threat of re-arrest and mandatory detention." *Nielsen v. Preap*, 586 U.S. 392, 403 (2019).

For decades, at least some district courts have understood the continuing restrictions imposed when a petitioner is released on bond for the pendency of immigration proceedings to mean that such petitioners continue to fall within the scope of § 2241. *See, e.g., Martinez v. Ashcroft*, 236 F. Supp. 2d 360, 361 n.1 (S.D.N.Y. 2002) ("Petitioner was released from INS custody on $25,000 bond but remains "in custody" for purposes of § 2241 habeas corpus relief."); *Mojica v. Reno*, 970 F. Supp. 130, 164 (E.D.N.Y. 1997), *aff'd in part, dismissed in part sub nom. Henderson v. I.N.S.,* 157 F.3d 106 (2d Cir. 1998) (noting, in the immigration detention context, that "[t]he writ of habeas corpus is not a formalistic remedy whose availability is strictly limited to persons in actual physical restraint" and finding that habeas jurisdiction continues despite release). Additionally, at least two

4

circuits have noted that release, or even deportation, during immigration proceedings does not moot habeas claims where continuing conditions are imposed or collateral consequences could still be addressed by the court. *Osorio-Martinez v. Att'y Gen. United States of Am.,* 893 F.3d 153, 161 (3d Cir. 2018) (quoting *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (explain that § 2241 "'has not required that a prisoner be physically confined' so long as the release is 'not unconditional.'"); see also *Abdala v. I.N.S.,* 488 F.3d 1061, 1064 (9th Cir. 2007) ("Just as '[a] habeas petition challenging the underlying conviction is never moot simply because, subsequent to its filing, the petitioner has been released from custody' . . . a petitioner's deportation does not automatically render his claim moot.").[2]

Moreover, in the specific context of preliminary relief from mandatory detention under the INA, where petitioners have been released pursuant to a temporary restraining order or preliminary injunction, district courts have found that the need for more permanent relief means that such cases are not moot—particularly where respondents continue to assert that petitioners are subject to mandatory detention. *See Ortiz Martinez v. Wamsley,* No. 2:25-CV-01822-TMC, 2025 WL 2899116, at *3 (W.D. Wash. Oct. 10, 2025) (citing *Nielson*, 586 U.S. at 403) ("the release of noncitizen plaintiffs from detention on bond under a preliminary injunction order did not moot their underlying claim that their mandatory detention was unlawful.")

Here, given that Plaintiff has been released on bond subject to additional conditions, continues to be in removal proceedings, was released only under an emergency order of this Court,

---

[2] There is also some indication, again from multiple courts interpreting Supreme Court precedent, that habeas jurisdiction is properly assessed when the petition is filed—i.e., that where, as here, there is some ongoing risk of re-detention or other continuing consequence, the relevant question is simply whether the petitioner was detained when the case began. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("The federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed."; *Ortiz Martinez*, No. 2:25-CV-01822-TMC, 2025 WL 2899116, at *3 (applying *Carafas* in the immigration context); *Osorio-Martinez*, 893 F.3d at 161 ("Petitioners' release from physical detention prior to oral argument in this matter does not affect our jurisdiction because, although habeas relief is limited to those "in custody," . . . the "in custody" inquiry is made "at the time the petition was filed.") (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

and that Respondents continue to assert that Petitioner should properly be detained under § 1225's mandatory detention authority, the Court is satisfied both that Petitioner's freedom is sufficiently curtailed and that he faces a significant enough threat of re-detention absent further relief for him to continue to fall within the reach of § 2241.

## B. Jurisdiction to Issue Preliminary Injunction and INA Jurisdiction-Stripping Provisions

Respondents argue that because Petitioner challenges his detention pending removal proceedings, this Court is stripped of jurisdiction to review his challenge under the jurisdiction stripping provisions of the INA—and therefore neither had jurisdiction to issue the preliminary injunction and nor has jurisdiction to rule on the Petition now. They assert 8 U.S.C §§ 1252(b)(4), (b)(9), and (g), and 8 U.S.C § 1226(e) as potential bars to this Court's jurisdiction.[3] (Resp., Dkt. 21, at 1-2, 3, 11).

First, 8 U.S.C. § 1252(b)(9) channels "[j]udicial review of all questions of law . . . including interpretation of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals—here the Fifth Circuit. However, the Supreme Court has indicated that where a Petitioner is not "asking for review of an

---

[3] Respondents' Response leaves some uncertainty about exactly which provisions they raise as jurisdictional bars to this case, but for the sake of thorough consideration, the Court attempts here to address all bars that Respondents may have attempted to raise. More specifically: Respondents cite 8 U.S.C. § 1225(b)(4) for the proposition that "to the extent Petitioner challenges an officer's finding under § 1225(b)(2)(A) that he is 'seeking admission,' that challenge must be raised in removal proceedings and reviewed only by the circuit court of appeals." (Resp., Dkt. 21, at 9). Section 1225(b)(4) deals with review of favorable decisions in admission interviews; the Court presumes that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), which discussed the scope and standard of review for orders of removal, and will rule on that basis and refer to § 1252(b)(4) in this opinion. However, if Respondents intended to refer to § 1225(b)(4) as a jurisdictional bar to Petitioner's claims, the Court finds nothing in that subsection that bars its jurisdiction here. Respondents also assert that § 1225(b)(4) says, or at least implies, that "challenges to decisions under § 1225(b), including the mandatory detention provision found within that statute, are to be raised in the same § 1229(a) [removal] proceedings." (Resp., Dkt. 21, at 12 n.7). However, again, § 1225(b)(4) instead says only that, if an immigration officer decides to admit a noncitizen, that favorable decision can be challenged, and such a challenge places the noncitizen in removal proceedings. Further, Respondents do not initially list § 1252(g) as a relevant provision, (Resp., Dkt. 21, at 1), but do later discuss that provision, (*id.* at 3). Again, to carefully address all aspects of jurisdiction, the Court likewise discusses § 1252(g) below.

6

order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen,* 586 U.S. at 402. Petitioner's challenge to his continued detention without bond as unlawful under the INA, agency regulations, and U.S. Constitution does not fall into any of those categories. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."). Rather than challenging his removal proceedings, Petitioner challenges the lawfulness of his detention without bond during the pendency of his removal proceedings. Thus, § 1252(b)(9) poses no bar.

Second, to the extent that Respondents invoke § 1252(b)(4), that section fails to assert a valid jurisdictional bar for the same reasons. Under 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal," Subsection (a)(1) indicates that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b)." *See* 8 U.S.C. § 1252(a)(1). Section 1252(b) generally, and (b)(4) specifically, elaborates on "requirements for review of orders of removal" as set forth in Subsection (a)(1). Because Petitioner does not assert a challenge to an order of removal, nothing in that subsection bars Petitioner from seeking relief from his continued detention in this case.

Third, 8 U.S.C. § 1252(g)—unless other laws provide jurisdiction—strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, as interpreted by the Supreme Court, this Section applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders."

7

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Thus, § 1252(g) does not apply to all claims with any relationship to deportation proceedings. Because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" to which § 1252(g) applies. *Reno*, 525 U.S. at 482.

Finally, 8 U.S.C. § 1226(e) states, in full, that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Here, Petitioner is not challenging a discretionary decision to grant or deny parole under 8 U.S.C. § 1226, but instead the determination that, as a matter of law, his detention is governed by 8 U.S.C. § 1225—*not* § 1226. As such, Respondents cannot assert a jurisdictional bar to the instant petition.

## C.  Petitioner's Petition for Writ of Habeas Corpus

As discussed in the Court's Order granting Petitioner's Motion for a Preliminary Injunction, (Dkt. 20), the core question here is whether Petitioner—having resided in the United States for roughly twenty years after entering without inspection—is properly subject to the INA's mandatory detention provision, 8 U.S.C. § 1225(b)(2), or whether he instead falls under the broader discretionary detention provision of 8 U.S.C. § 1226. In short, for the reasons explained in the preliminary injunction order—namely, statutory text, statutory context, legislative history, and historical interpretation by agencies—the Court finds that, as a matter of law, Petitioner is not subject to mandatory detention under § 1225. Below, the Court repeats that analysis, elaborating where appropriate on additional concerns raised by Respondents in their Response to Petitioner's Second Amended Petition.

Under § 1225(b)(2), the INA requires mandatory detention for a noncitizen who is either subject to expedited removal under § 1225(b)(1) or—at issue here—an "applicant for admission" who is "seeking admission," where the examining immigration officer determines the individual to not be "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1192(d)(5).

By contrast, 8 U.S.C. § 1226(a) provides for the discretionary detention of noncitizens arrested "on a warrant." Section 1226 allows for release on bond and provides "procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an immigration judge and a right to appeal any custody determination." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-479, 2025 WL 2783642, at *2.

Respondents contend that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted or paroled—regardless of how long such an individual has been present in the country. (Resp., Dkt. 21, at 6). This position relies on § 1225(a)(1)'s definition of an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Given this definition, "applicant for admission" would be a broad enough category to include an individual like Petitioner, who was not admitted to the United States, regardless of how long that individual has resided in the United States.

However, 8 U.S.C. § 1225(b)(2) references not just an "applicant for admission," but an "applicant for admission" who is "seeking admission." Multiple courts have read this "seeking admission" requirement to mean a noncitizen present in the United States without admission who *has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country

9

for years. *See Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025); *see also Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4 (D. Mass. July 24, 2025). In fact, again as noted by multiple courts, reading § 1225(b)(2) as Respondents suggest would make "seeking admission" surplus language that has no effect on the meaning of the provision. *See Martinez,* 2025 WL 2084238, at *6 ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text."); *see also Lopez Benitez,* 2025 WL 2371588, at *6 ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute.").

Similarly, reading § 1225(b)(2) as sweeping so broadly would also eliminate much of the meaning of § 1226: nearly every noncitizen would be subject to mandatory detention, making it unclear why the INA also contains a broadly-worded discretionary-detention provision. *See Lopez Benitez,* 2025 WL 2371588, at *8.[4] It is well established that "[i]nterpretations of statutes and regulations that avoid surplusage are favored." *Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020). As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country.

---

[4] As the United States District Court for the Southern District of New York explained in *Lopez*, "Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application. If, as Respondents contend, anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A) . . . then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply. Perhaps it might still apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully. But there is no indication that Congress intended § 1226 to be limited only to visa overstays. And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach."

Respondents cite the Fifth Circuit case *Martinez v. Mukasey*, 519 F. 3d 532 (5th Cir. 2008), for the proposition that "seeking admission" means effectively the same thing as "applicant for admission." (Resp., Dkt. 21, at 6–8). However, the decision in *Martinez* construes the meaning of "admission" and "admitted" in a different provision of the INA—not the question of whether "seeking admission" adds anything to the meaning of § 1225(b)(2). As noted above, the statutory definition of "applicant for admission" is broad enough—were it used on its own—to possibly encompass a noncitizen in Petitioner's position. The question is not, then, whether the INA defines "admission" or "admitted" in reference to lawful inspection and entry: it is whether the idea of "seeking admission" adds anything to § 1225(b)(2). Given that reading "seeking admission" to cabin § 1225(b)(2)'s application to recent entrants both avoids reading that language as mere surplusage and allows § 1225(b)(2) to fit more naturally with § 1226, the Court is persuaded by that textual reading.

This reading is further supported by legislative history, recent amendments, and longstanding agency practice. Both § 1225(b)(2) and § 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. The IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention). *See Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025). This dual approach was reflected by the Supreme Court in 2018 in *Jennings*, which did not squarely address the issue in the present case, but framed the distinction between § 1225 and § 1226 as follows:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added).

11

A recent amendment to the INA reinforces this reading. Earlier this year, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *19 (W.D. Wash. Sept. 30, 2025). The Court is not persuaded by Respondents' assertion that the Laken Riley Act should be read as merely redundant, out of a recognition that "drafters *do* repeat themselves and *do* include words that add nothing of substance." (Resp., Dkt. 21, at 10). What Respondents allege to be mere redundancy is not simple repetition or a few words that add nothing of substance—their allegation is that the entire change that the Laken Riley Act made to § 1226 is effectively meaningless. By contrast, Congress's amendments fit logically into the statute if § 1225 and § 1226 are read as Petitioner suggests.

The interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the United States is also supported by longstanding agency regulations and practice. U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of

12

noncitizens arrested near international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Vasquez,* 2025 WL 2676082, at *15; *Rodriguez,* 2025 WL 2782499, at *24–26.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez,* 2025 WL 2676082, at *9–10. This new agency interpretation was adopted by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

*Matter of Yajure Hurtado* was a departure from the BIA's previous interpretation of the statute. *See Rodriguez,* 2025 WL 2782499, at *5. For example, in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025), a decision from one month before *Matter of Yajure Hurtado*, the BIA applied § 1226 to the detention of a noncitizen who had entered the United States without inspection three years prior. That decision was designated as precedent by the U.S. Attorney General. *See Rodriguez,* 2025 WL 2782499, at *5. Moreover, in an unpublished 2023 decision dealing with the application of § 1225(a)(2) versus § 1226 to a noncitizen already present in the United States, the BIA itself said that it was "unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here." *See id.* at *26. While the BIA's interpretation of the INA is not entitled to any deference by

13

this Court under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Matter of Yajure Hurtado*'s inconsistency with prior pronouncements reduces even its "power to persuade." *Loper Bright,* 603 U.S. at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 n.3, (S.D. Tex. Oct. 7, 2025) (collecting cases declining to follow *Matter of Yajure Hurtado* under *Loper Bright*).

District courts across the country have been weighing this new interpretation. Repeatedly, they have found that DHS and BIA's construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citing *Pizarro Reyes*, 2025 WL 2609425, at *4); *see also Lopez-Arevelo*, 2025 WL 2691828, at *7 ("In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."); *Rodriguez*, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases and noting that "[e]very district court to address" the statutory question "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (joining the "chorus" of courts concluding that § 1226 applies);

For the reasons discussed above and cited by other district courts—the statute's text, the statute's history, Congressional intent, and the consistent past application of the statute—the Court concludes that Petitioner is correct that his detention under § 1225(b)(2) is in violation of the INA. Having determined that Petitioner cannot be detained under § 1225(b)(2) and that he is therefore

14

entitled to relief, as described below, the Court does not reach Petitioner's constitutional or regulatory claims.

## III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows: Respondents are enjoined from detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.

**SIGNED** on December 12, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE